IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA SURETY CO., | No. C 10-02751 SI |
| Plaintiff, | **ORDER DENYING MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| LEXINGTON INS. CO., | |
| Defendant. | |

Currently before the Court is defendant Lexington Insurance Company's motion for summary judgment. This matter came on for hearing on June 24, 2011. Having considered the papers submitted and arguments made, the Court DENIES the motion.

**BACKGROUND**

Plaintiff Virginia Surety Company, Inc. filed this action in state court seeking equitable contribution from defendant Lexington Insurance Company for defense and indemnity costs related to the defense and settlement of a construction defect lawsuit. On June 23, 2010, defendant Lexington removed the case to this Court under diversity jurisdiction. Docket 1.

The companies do not dispute the following facts: In October 2006, Trendwest Resorts sued general contractor Nordby Construction in Sonoma County, California for alleged defects arising out of the construction of a development in Windsor, California. *See* Request for Judicial Notice (RJN, Docket No. 24), Ex. A.[1] The alleged construction defects appeared in or about February 2005. *Id*.

---

[1] The Court GRANTS defendant's request for judicial notice (Docket No. 24), which asks this Court to take judicial notice of three complaints filed in state court.

Nordby filed a cross-complaint against various subcontractors on the project, including Galletti & Sons, the insured in this case. *Id.*, Ex. B. Nordby claimed Galletti improperly carried out its concrete work on the project. *Id.* Trendwest obtained a judgment against Nordby in April 2009, and Nordby settled its claim against Galletti for $620,000 in November 2009. *See* Quintero Decl. (Docket No.25 ), Ex. C.

Galletti had two insurance policies relevant to this case. One was a general commercial liability policy with defendant Lexington, effective November 1, 2003 to November 1, 2004. Quintero Decl., Ex. B. That policy had a "self-insured retention" (SIR) endorsement of $25,000, requiring that Galletti "assume" the retained limit and "exhaust" it before Lexington would be required to provide coverage. *Id.*, Ex. A (Endorsement #016). The other was a general commercial liability policy with Virginia Surety that was in effect from November 1, 2004 through November 1, 2005. *Id.*, Ex. G. That policy had a $25,000 deductible. *Id.*

Galletti tendered the defense and coverage of the action to both Lexington and Virginia. Virginia accepted the defense of the action under its policy and incurred $75,523 in defense of the case in addition to the $620,000 damages agreed to in settlement. Notice of Removal, Ex. A ¶ 5. Lexington denied coverage because Galletti never "satisfied" the self-insured retention amount. Quintero Decl., Ex. E.[2]

The issue before the Court is whether plaintiff is entitled to proceed to trial against Lexington for equitable contribution of part of its defense and settlement costs incurred on behalf of Galletti. Lexington argues that Galletti did not satisfy Lexington's SIR and Virginia contends that by paying the $25,000 deductible in its policy, Galletti satisfied the SIR sufficient to trigger coverage under Lexington's policy.

**LEGAL STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and

---

[2] Plaintiff objects to the admissibility of this letter, which was issued by AIG Domestic Claims, Inc., the claims administrator for the Lexington policy. As the letter notes and plaintiff does not dispute, AIG Claims is a member company of AIU Holdings, Inc., as is Lexington Insurance Company. *See* Quintero Decl,. Ex. E. The Court finds in these circumstances that the letter is attributable and admissible as a party statement of Lexington.

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Id.* at 324 (quoting then Fed. R. Civ. P. 56(e)). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)).

**DISCUSSION**

Plaintiff Virginia Surety argues that Lexington has failed to meet its summary judgment burden because Lexington failed to present evidence showing that Galletti did *not* "satisfy" the Lexington $25,000 SIR. Oppo. at 5-8. Virginia Surety's argument is misplaced. Plaintiff, as the party suing Lexington for equitable contribution, will bear the burden at trial to demonstrate that Lexington is legally required to contribute to Galletti's defense and damages. As the California courts have repeatedly noted, SIRs "are the equivalent to primary liability insurance, and [] policies which are

3

subject to self-insured retentions are 'excess policies' which have no duty to indemnify until the self-insured retention is exhausted." *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal. App. 4th 1466, 1474 (Cal. App. 4th Dist. 2010) (quoting *Pacific Employers Ins. Co. v. Domino's Pizza, Inc*., 144 F.3d 1270, 1276–1277 (9th Cir. 1998), applying Cal. law). Here, Lexington provides evidence that, at least as of April 6, 2009, Lexington's claims administrator had no evidence that the SIR has been satisfied. Therefore, Lexington denied coverage and closed the case until the claims administrator received notice that the SIR was or would soon be satisfied. Quintero Decl., Ex. E. Virginia Surety, then, bears the burden of showing by admissible evidence that there is a material question of fact as to whether the Lexington SIR was satisfied by Galletti.

Plaintiff then argues that the SIR was satisfied because Galletti incurred a $25,000 deductible under the Virginia Surety policy. Virginia Surety relies on the principle that where, as here, there are allegations of progressive damage and multiple policies under which coverage may be implicated, the duty to defend and resulting damages may be covered by all policies in effect during the relevant periods. *See* Oppo. at 7 (citing *Montrose Chemical Corp. v. Admiral Ins*. Co., 10 Cal. 4th 645 (1995)). Plaintiff asserts that Lexington is prevented by the "anti-stacking rule" from requiring Galetti to satisfy Lexington's SIR in addition to Galletti satisfying Virginia Surety's deductible. Oppo. at 8-16.

Plaintiff is correct that courts in California have held that an insurer cannot "stack" SIRs by requiring an insured to exhaust all SIRs in multiple policies that potentially provide coverage before being liable under its own policy. For example, in *Cal. Pac. Homes v. Scottsdale Ins. Co.*, 70 Cal. App. 4th 1187 (Cal. App. 1st Dist. 1999), the California Court of Appeal held that stacking of SIRs was not appropriate where the insured made one claim against one policy and the settlement amount fell under that policies' limits. *Id*. at 1194-95. A different Court of Appeal in *Montgomery Ward & Co. v. Imperial Casualty & Indem. Co.*, 81 Cal. App. 4th 356 (Cal. App. 2d Dist. 2000) similarly held – in a case where the insured sought declaratory relief on whether four insurers who issued at least nine different policies covering nine consecutive periods were required to provide coverage – that the insurers could not require plaintiff to exhaust the SIR in each of the potentially applicable policies before any insurer had a duty to indemnify. *Id*. at 364. In reaching that conclusion, the Court explained that SIRs could not be treated as "primary insurance" which would need to be "horizontally exhausted"

4

across the policies before "excess" coverage under any of the policies would be implicated. *Id*.

Lexington argues, initially that the distinction between deductibles and SIRs make these SIR anti-stacking cases inapposite. *See* Motion at 11. A leading treatise on California insurance law recognizes the differences between the two, but states that "[t]he insurer called upon to pay the loss cannot reduce its liability by 'stacking' deductibles or self-insured retentions (SIRs) under other policies that covered the risk during the continuous injury period." Croskey et. al, *California Practice Guide Insurance Litigation* at 7:177.6, p. 7A-89-90.[3]

More fundamentally, however, the question here is not whether Lexington is requiring Galletti to pay other, additional SIRs or deductibles in other policies before it can be liable under its own policy, but whether Virginia can claim that Galletti's payment of the $25,000 deductible to Virginia Surety satisfies the $25,000 SIR under the Lexington policy. *Cf. Montgomery Ward*, 81 Cal. App. 4th at 367 ("[c]ertainly an SIR in an insurance policy must be exhausted before the insurer is liable under that policy. This is the very nature of an SIR, and flows from the specific terms of the policy.")

Lexington argues that only Galletti – the sole named insured under the policy – could satisfy the SIR. *Compare* SIR, Quintero Decl., Ex. B ("you agree to assume the Retained Limit") *with* Ex. A at 5IP005 (defining "you" as named insured on declaration, as well as any other person or organization "qualifying as a named insured under this policy".) Lexington asserts that there is no evidence that Galletti "paid" the SIR. Lexington appears to argue that Galletti was supposed to pay $25,000 <u>to Lexington</u> in order to exhaust the SIR,[4] but there is nothing in the SIR or case law to support that argument. Lexington's SIR endorsement only requires that the SIR be "assumed" and "exhausted" by Galletti incurring $25,000 in connection with the "occurrence." Quintero Decl., Ex. A at 1.

---

[3] As described in Croskey, the essential differences between deductibles and SIRs include: (1) the policy limits in a policy with a SIR apply on top of the SIR amount (Croskey, 7:384, p.7A-150; (2) deductibles do not affect the duty to defend, whereas in a policy with a SIR – if the policy explicitly so states – the duty to defend will not arise until the SIR is exhausted. *id*. at 7:378, p.7A-145 & 7:385.1, p. 7A-151; and relatedly (3) SIRs must be satisfied before there is any insurance coverage under the policy. *Id*., 7:384, p. 7A-150

[4] *See, e.g.,* Reply at 3:20-21 (discovery responses are "devoid of <u>any</u> reference to a payment by Galletti to Lexington") (emphasis in original); at 3:24-25 ("Virginia did not state any fact or identify any document that show Galletti ever paid Lexington."). During the hearing, defense counsel admitted that the $25,000 SIR did not need to be paid to Lexington, but only exhausted by Galletti paying expenses related to the claim out of its pocket.

5

The SIR endorsement also provides that the Retained Limit can be met by the insured's payment of Allocated Loss Adjustment Expenses, which are defined as fees and costs "reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or claim or 'suit' against you." *Id.*, at 2, 4. Virginia Surety submits evidence that its $25,000 deductible, required from Galletti, was due for coverage of fees and defense costs incurred by Virginia Surety on Galletti's behalf to defend the Trendwest/Norby actions. Declaration of James Dunham (Docket No. 26-2), Ex. B. Virginia Surety also claims that the $25,000 deductible was subsequently satisfied by Galletti "at least by June 2009, and perhaps even earlier" when Gallagher Basset Services (the third party administrator for Virginia Surety), deducted $25,000 from a "returned premiums" check to Galletti in order to cover the Virginia Surety deductible. *See* Oppo. at 16; Dunham Decl., ¶¶ 17, 21 & Ex. C thereto.

Lexington objects to Virginia's evidence on the grounds that it is hearsay, lacks proper foundation, lacks personal knowledge, is conclusory, calls for speculation and calls for legal a conclusion. *See* Reply at 7. The Court overrules those objections. The Court acknowledges that the evidence provided is missing some links. For example, the copy of the check provided to the Court is basically illegible and there is no visible date supporting the claim in plaintiff's opposition brief that the deductible was satisfied by at least June 2009. *Compare* Dunham Decl., 21 & Ex C., *with* Oppo. at 16:10-11. There is also a less than clear explanation of the relationship between Mr. Dunham's employer – Gallagher Bassett – and Old Republic Construction Program (who asked Galletti to pay the $25,000 retainer to Gallagher Bassett in Exhibit B) and Gallagher & Co. (whose check apparently is included in Exhibit C). However, evidence of the connection can be gleaned from the documents themselves and this evidence is sufficient to raise a question of material fact as to whether and when Galletti satisfied the Virginia Surety $25,000 deductible, and therefore, the $25,000 SIR in the Lexington policy.

Lexington also argues that under the terms of the SIR "other insurance" could not be used to exhaust the SIR. *See* Motion at 9-10; SIR ("The Retained Limit, or any part of it, shall not be insured without our prior written approval."). However, the $25,000 taken by Gallagher Bassett from the amount of returned insurance premiums otherwise owed to Galletti is not "insurance" to cover the SIR. It is money that was paid by Galletti in insurance premiums and but for the $25,000 deductible, would

6

have been returned to Galletti's pocket.[5] This is not a case, therefore, where another insured or an insurance company is attempting to "pay" or satisfy the SIR on Galletti's behalf in order to invoke Lexington's policy. *See, e.g., Forecast Homes*, 181 Cal. App. 4th 1466.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES defendant's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: July 6, 2011

SUSAN ILLSTON
United States District Judge

---

[5] It is important to note that in rejecting Lexington's arguments, the Court is not determining whether Lexington's policy provided coverage to Galletti or, if coverage is required, how much Lexington is required to contribute to the defense and settlement amounts incurred by Virginia Surety. Those issues turn on a host of issues not addressed in this motion.